Catherine FELDMAN et al., Plaintiffs,

v.

U. S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT et al., Defendants.

Civ. No. 76–229.

United States District Court, E. D. Pennsylvania.

March 31, 1977.

George D. Gould and Douglas Frenkel, Community Legal Services, Inc., Philadelphia, Pa., for plaintiffs.

Kenneth A. Ritchie, Asst. U. S. Atty., Richard L. Bazelon, Philadelphia, Pa., for defendants.

## OPINION

DITTER, District Judge.

This case is before the court on defendants' motion to dismiss and plaintiffs' cross-motion for partial summary judgment. For the reasons stated in this opinion defendants' motion is granted.[1]

Plaintiffs are tenants of the Casa Enrico Fermi Apartments, an apartment project for senior citizens owned and operated by defendant Casa Enrico Fermi, Inc. The project was financed by a federal loan under section 202 of the Housing Act of 1959, 12 U.S.C. § 1701q. The United States Department of Housing and Urban Development administers the loan under a regulatory agreement with Casa Fermi. Pursuant to 24 C.F.R. § 227.8, the regulatory agreement requires HUD approval of any rent increases instituted by Casa Fermi. The regulatory agreement also requires, in accordance with an unpublished HUD Handbook, RHM 7745.1 Supp. 1, that Casa Fermi submit to HUD an annual audit by

an independent public accountant. In October, 1975, HUD gave final approval to a rent increase requested by Casa Fermi of approximately 27 percent for each unit.[2] Plaintiffs are seeking judicial review of this decision by HUD. Specifically, they allege that because the audit submitted by Casa Fermi was not supported by an opinion letter from the accountant HUD should not have approved the rental increase.

The court has jurisdiction over this action, based on 28 U.S.C. § 1337 in that the Housing Act of 1959 is a statute regulating commerce. See *Ellis v. HUD*, 551 F.2d 13, at 15 (3d Cir. 1977); *Davis v. Romney*, 490 F.2d 1360, 1365-66 (3d Cir. 1974).

## JUDICIAL REVIEW

Several cases have held that decisions by the Federal Housing Administration approving rent increases under various provisions of the National Housing Act are not judicially reviewable. *Harlib v. Lynn*, 511 F.2d 51, 56 (7th Cir. 1975); *Langevin v. Chenango Court, Inc.*, 447 F.2d 296, 302-04 (2d Cir. 1971); *Hahn v. Gottlieb*, 430 F.2d 1243, 1249-51 (1st Cir. 1970); *Dew v. McLendon Gardens Associates*, 394 F.Supp. 1223, 1233-35 (N.D.Ga.1975); *People's Rights Organization v. Bethlehem Associates*, 356 F.Supp. 407, 410-11 (E.D.Pa.), aff'd, without opinion, 487 F.2d 1395 (3d Cir. 1973).[3] These courts have found that approval of rent increases is a matter "committed to agency discretion by law" under section 10 of the Administrative Procedure Act, 5 U.S.C. § 701(a)(2). Although the reasoning in these cases has varied somewhat, I agree with the rationale put forth by Judge Friendly in *Langevin*. There the court stated that due to the discretionary nature of the responsibilities entrusted to the FHA in administering a contract which

1. Since I have considered matters outside the pleadings I am treating defendants' motion as one for summary judgment.

2. The plaintiffs were given an opportunity to submit their views to HUD concerning the proposed rent increase, pursuant to settlement of an earlier action, C.A.No. 75-1159, involving the same parties and challenging the same rent increase here at issue.

3. In the *People's Rights* case the issue of judicial review arose in connection with the broader question of whether the APA provided a source of jurisdiction for the district court. That issue has been finally determined against jurisdiction. See *Sanders v. Califano*, — U.S. —, 97 S.Ct. 980, 51 L.Ed.2d 192 (filed February 23, 1977).

Congress authorized it to make, the need for expedition, the number of appeals that would otherwise result, and the lack of any congressionally-enunciated standards for review, it should be concluded that Congress did not intend the FHA's decision to be reviewable. *Langevin*, supra, at 303. The same reasoning applies to rent increase decisions made by the Secretary of HUD under section 202 of the Housing Act of 1959.

Notwithstanding the cases cited, plaintiffs put forward two basic arguments in support of their claim to judicial review. First they assert that the Supreme Court decision in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), has altered the test to be applied in determining whether agency action is subject to judicial review.[4] They read *Overton Park* to stand for the proposition that action is "committed to agency discretion" under the Administrative Procedure Act only in those "rare instances" where there is no "law to apply." See 401 U.S. at 410, 91 S.Ct. at 821. Plaintiffs then argue that certain provisions in the HUD Regulations, operating procedures, and regulatory agreement constitute "law to apply" by the courts in reviewing rent increase decisions.[5] The answer to this argument is that the reference in *Overton Park* to "law to apply" specifically dealt with

statutory law—i. e. some kind of standard enacted by Congress by which the courts could measure agency action. In *Overton Park* such a standard existed in the form of statutory guidelines for the Secretary of Transportation to follow. In the case at hand no such statutory guidelines exist with respect to rent increases. The statute makes no mention of rent increases at all. Thus, contrary to the plaintiffs' view, *Overton Park* supports a decision that approval of rent increases by HUD is not subject to review. See *Dew v. McLendon Gardens Associates*, supra, 394 F.Supp. at 1234.[6]

Plaintiffs' second line of argument is based on the alleged failure of HUD to follow its own binding regulations since HUD approved the rent increase without requiring Casa Fermi's audit to contain an accountant's opinion letter. Plaintiffs point to provisions in the HUD Loan Management Handbook, RHM 7745.1 Supp. 1, a HUD "Circular," HUD–5510 April 1967, and the regulatory agreement, calling for section 202 projects to submit an annual audit by an independent public accountant.[7] For purposes of summary judgment I am assuming that the audit requirement includes the filing of an opinion letter.[8] Thus, if this requirement were binding on HUD an issue would arise as to whether its violation would subject the rent increase to

---

4. It is noteworthy that of the cases cited denying judicial review, only *Hahn* preceded *Overton Park*.

5. In particular, plaintiffs point to a HUD Regulation which they claim requires the Secretary of HUD to ensure "minimum rentals" in section 202 projects. 24 C.F.R. § 277.2. In fact, this regulation contains no such explicit directive, but merely provides in part:

   Project design, site selection, and financial arrangements must be consistent with the ultimate purpose of providing pleasant living arrangements at minimum rentals to promote independent living by elderly or handicapped families.

6. I am aware that my colleague, Judge Fullam, has recently held in *O'Conlon v. United States*, C.A.No. 76–960 (E.D.Pa. Nov. 29, 1976), that applicable HUD regulations and the terms of a regulatory agreement constitute "law to apply" under *Overton Park*. I most respectfully disagree with this portion of his opinion.

7. Plaintiffs also claim that the audit of the Casa Fermi Apartments was not conducted by an "independent" accountant, although this contention was rejected by HUD in its review of the comments submitted by the tenants.

8. HUD does not define its use of the term "audit" in the documents cited by plaintiffs or say that an opinion letter must accompany an "audit." Nonetheless, there is some force to the plaintiffs' view that the term "audit" as used by HUD includes an opinion letter. The plaintiffs' position is supported by the American Institute of Certified Public Accountants in *Statement on Auditing Standards* 80 (1973), and by the Comptroller General of the United States in "Standards for Audit of Governmental Organizations, Programs, Activities & Functions" 1, 9 (1972). Furthermore, 13 out of 15 section 202 projects in Philadelphia submitted opinion letters as part of their annual audits. *See* deposition of Anthony Peruto at p. 20. It seems that for most 202 projects there was

judicial review.[9] However, it is unnecessary to reach this question since, as will be seen, the HUD documents relied on by the plaintiffs in their brief were not binding upon HUD and created no rights in the plaintiffs.

■ Plaintiffs rely on three separate documents which they claim require HUD to obtain from Casa Fermi a yearly audit and accountant's opinion. The first of these is HUD. Loan Management Handbook, RHM 7745.1 Supp. 1, an unpublished handbook containing agency internal operating procedures. The question of when regulations become binding on an agency has not always been uniformly dealt with by the courts.[10] Generally, however, binding regulations are required to be published in the Federal Register. See 5 U.S.C. §§ 552(a)(1)(D), 553. The plaintiffs argue that despite nonpublication the handbook is binding on HUD. Their contention is similar to that made by the plaintiffs in *Brown v. Lynn*, 392 F.Supp. 559, 560 (N.D.Ill.1975): that section 4 of the Administrative Procedure Act, 5 U.S.C. § 553(a)(2) exempts the handbook from the normal APA notice requirement of publication in the Federal Register.[11] Assuming that the absence of publication does not automatically render the handbook nonbinding, it is at least one important indication that HUD did not intend its handbook to be binding. Furthermore, there are other factors which point to the same conclusion. The procedures contained in the handbook were intended mainly for use by the HUD Area Offices. *See* Ch. 1, p. 1. That the handbook was not meant to be an independent source of authority for formal HUD actions is shown on the same page: "Any formal loan management actions taken must be based on the terms and conditions of the loan agreement, and/or the mortage."

The Third Circuit has held a similar handbook to be nonbinding in the case of *Concerned Residents of Buck Hill Falls v. Grant*, 537 F.2d 29 (3d Cir. 1976.). There the court stated that since a guide and handbook in question were "merely internal operating procedures, rather than regulations officially promulgated under the APA or otherwise, they do not prescribe any rule of law binding on the agency." Id. at 38. This conclusion is supported by *McCullough v. Redevelopment Authority of Wilkes-Barre*, 522 F.2d 858, 867 n. 27 (3d Cir. 1975). *See also Brennan v. Ace Hardware Corp.*, 495 F.2d 368, 376 (8th Cir. 1974).

■ The plaintiffs next contend that the provisions of a HUD leaflet, HUD–5510 April 1967, which they designate as a circular," are binding on HUD. For support they rely primarily on *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). In *Thorpe* the Supreme Court held certain HUD circulars to be binding, where the circulars were issued as modifications of the existing Low-Rent Management Manual, a manual promulgated pursuant to HUD's general rule-making power. 393 U.S. at 274–75, 89 S.Ct. at 522. These circulars were later incorporated into the Low-Rent Management Manual. The court distinguished these circulars from "the various 'handbooks' and 'booklets' issued by HUD [which] contain mere

never any doubt that an audit meant the inclusion of an opinion letter.

**9.** In *Hahn* and *Langevin*, supra, the First and Second Circuits stated that their holding of judicial nonreviewability extended to all cases except those in which "the FHA has ignored a plain statutory duty, exceeded its jurisdiction, or committed constitutional error." *Hahn*, supra, at 1251. In the present case HUD violated no statutory duty, nor did it exceed its jurisdiction. Had there been binding regulations which HUD violated, this may have given rise to a due process argument on behalf of the plaintiffs. *See*, e. g., *Otero v. New York City*

*Housing Authority*, 344 F.Supp. 737 (S.D.N.Y. 1972). But such was not the case here.

**10.** See generally Note, *Violations by Agencies of Their Own Regulations*, 87 Harv.L.Rev. 629 (1974).

**11.** Without passing on this question the court in *Brown v. Lynn* held that in order for the HUD handbook to become binding, HUD was required to publish it in the Federal Register in accordance with its own regulation 24 C.F.R. § 10.5.

**1328**

'instructions,' 'technical suggestions,' and 'items for consideration.'" 393 U.S. at 275, 89 S.Ct. at 522. The HUD–5510 leaflet falls within this latter category. It is titled "Highlights of the Loan Provisions and Project Reporting Requirements." The front cover bears the following statement:

> The instructions and reports contained herein are based on the provisions of the executed Loan and Regulatory Agreements and the Mortgage (or Deed of Trust) conditions. . . . The Borrower is expected to furnish conformed copies of such documents to persons or firms employed to perform any of the services necessary to satisfy the prescribed requirements.

It is thus clear that this leaflet or circular functions as an instructional aid to borrowers or potential borrowers.

■ Lastly, the plaintiffs claim to have third party beneficiary rights under the regulatory agreement between HUD and Casa Fermi. The issue here is whether the parties to the agreement intended to confer rights upon the tenants. *See McCullough,* supra, 522 F.2d at 867 n. 27. Two recent cases have squarely held that regulatory agreements do not confer third party beneficiary rights on tenants. In *Ellis v. HUD,* C.A.No. 75–1721 (E.D.Pa. April 8, 1976), aff'd. 551 F.2d 13 (3d Cir. 1977), the plaintiff tenants were held to be incidental beneficiaries rather than creditor or donee beneficiaries under the regulatory agreement. And in *Fenner v. Bruce Manor, Inc.,* 409 F.Supp. 1332, 1349–50 (D.Md.1976), the court held that there was no intention on the part of HUD or the project owner to grant third party beneficiary rights to the tenants. A reading of the regulatory agreement in the present case likewise reveals no intention to grant such rights to the tenants.

Accordingly, summary judgment for the defendants will be granted.