LOCAL 2855, AFGE (AFL–CIO) President, Local 2855 James P. Riley, Sol E. Mortner, Joseph Belmonte, Vincent J. Bonner, William N. King, Crescenzo J. Campanelli, Michael J. Vitale, and Gene J. Spampani, Appellants,

v.

UNITED STATES of America, Martin Hoffman, Secretary of the Army, Col. Joseph Torsani, Jr., Commanding Officer, Robert E. Hampton, Chairman, U.S. Civil Service Comm., Georgiana H. Sheldon, Commissioner, U.S. Civil Service Commission, Ludwig J. Andolsek, Commissioner of U.S. Civil Service Commission.

No. 78–2402.

United States Court of Appeals, Third Circuit.

Argued June 5, 1979.

Decided July 11, 1979.

Joseph Meehan (argued), Meehan & Kenney, Long Branch, N.J., for appellants.

Robert J. Del Tufo, U.S. Atty., Anne C. Singer, Asst. U.S. Atty., Newark, N.J., for appellees; James K. Jackson, Michael J. Wentink (argued), Washington, D.C., of counsel.

Before ADAMS and ROSENN, Circuit Judges, and LAYTON,* District Judge.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This class action was instituted by Local 2855 of the American Federation of Government Employees and by civilian employees of the Department of the Army to contest the decision of the Army to contract out to a private concern the stevedoring and terminal services previously performed by government employees at the Military Ocean Terminal in Bayonne, New Jersey. The district court dismissed the suit for lack of subject matter jurisdiction. In an opinion delivered from the bench, it justified this result on the ground that the decision to contract out involved the exercise of discretionary, managerial prerogatives that were based upon an evaluation of cost factors.[1] Although our approach differs somewhat from that adopted by the district court, its judgment will be affirmed.

I.

It is a stated policy of the federal government to rely on the private enterprise system to supply its needs except when the

---

* Honorable Caleb R. Layton, III, United States District Judge for the District of Delaware, sitting by designation.

1. App. 216a–218a.

national interest requires that the government provide directly the products and services it uses. This policy is outlined in Office of Management and Budget (OMB) Circular No. A–76, which is addressed to the heads of executive departments and agencies, and is detailed with greater specificity in the directives and regulations issued by them to facilitate its implementation.

Among the limited situations in which the government is permitted to provide a commercial or industrial product or service for its own use is one that obtains when comparative cost analysis indicates that procurement from a private source will result in significantly higher costs to the government. Systematic cost evaluations of existing government activities must be scheduled at least once every three years to determine whether continued reliance on the government to supply the product or service is justified.

Pursuant to the obligations imposed on it by the OMB Circular, by Department of Defense Directive 4100.15, and by Army Regulation 235–5, the Military Traffic Management Command (MTMC) conducted a survey of terminal operation functions at its Military Ocean Terminal in Bayonne, New Jersey (MOTB), in early 1975. Until then, the practice at MOTB was to process cargo both by a private contractor and by civil service personnel. As a result of its cost analysis, MTMC recommended that the Army utilize a private contractor to perform the stevedoring and terminal services then being performed by the plaintiff civil service employees. After various cost projections were updated and additional information compiled, the Army Audit Agency, which studied the MTMC's recommendation, concluded that a substantial cost saving would be realized over a 10-year period if these functions were contracted out.[2]

Based on these analyses, the Secretary of the Army decided to terminate all in-house performance of stevedoring and terminal services. Reduction in force notices (RIFs), effective June 15, 1976, were sent to the government employees who had been rendering the stevedoring and terminal services,[3] and a private contractor was engaged to perform the work.

## II.

In this suit the affected employees and their union essentially launch a three-pronged attack on the decision by the Army to contract out the services in question. First, they contend that the cost-analysis studies were faulty on a number of grounds, and that had the available options and their costs been properly evaluated, the use of civil service labor would have been found to be less costly to the government than contracting out. Second, plaintiffs maintain that the RIFs abrogated statutory and regulatory provisions that specify the circumstances in which RIFs may be issued and that grant the plaintiffs preferences as veterans, thereby depriving them of a due process property interest. Finally, plaintiffs argue that the contracting out in this case constitutes an illegal personal service contract, designed to circumvent the government's obligations to civil service employees.

A. *General Considerations Regarding the Reviewability of the Army's Decision*

■ Whether and to what extent we may entertain the plaintiffs' challenges to the Army's decision is controlled by the Administrative Procedure Act (APA),[4] which contemplates that judicial review be available at the behest of any person adversely af-

---

**2.** The standards and audit techniques utilized by the Audit Agency were reviewed by the Comptroller General of the United States at the request of Congressman Dominick Daniels of New Jersey, and were determined to be "acceptable." App. 145a–149a.

**3.** Approximately 215 civil service employees were affected by the Army's decision. Of them, 137 retired, 29 were separated and received severance pay, and 5 were separated and did not receive any benefits. The remaining employees were reassigned to other civil service jobs. App. 6a; 149a.

**4.** 5 U.S.C. §§ 701–06 (1976).

fected or aggrieved by agency action[5] "except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."[6]

██ The Supreme Court has emphasized repeatedly that the APA's " 'generous review provisions' must be given a 'hospitable' interpretation,"[7] and that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review."[8] Thus, in the absence of a specific statutory preclusion of review, agency action may be determined to be "committed to agency discretion by law" only when a fair appraisal of the entire legislative scheme, including a weighing of the practical and policy implications of reviewability, persuasively indicates that judicial review should be circumscribed.[9] Examination of those cases in which matters have been held nonreviewable yields a number of criteria that bear upon the reviewability of the Army's decision in the present case.

██ A predicate to nonreviewability is that the agency have *broad* discretionary powers, not merely that its action involve *some* discretion. For, as the Ninth Circuit put it, "[a]lmost every agency action involves some degree of discretion of judgment. Yet it cannot be said that, for this reason, every agency action is unreviewable."[10] In the same vein, the legislative history of the APA, referred to in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971), indicates that the committed to agency discretion exception to judicial review is intended to be "applicable in those rare instances where 'statutes are drawn in

---

**5.** 5 U.S.C. § 702 (1976). For purposes of the APA the Department of Defense as well as its subdivisions is an "agency." *See* 5 U.S.C. § 701(b)(1) (1976).

**6.** 5 U.S.C. § 701(a) (1976).

**7.** *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), *quoting Shaughnessy v. Pedreiro*, 349 U.S. 48, 51, 75 S.Ct. 591, 99 L.Ed. 868 (1955).

**8.** *Abbott Laboratories, supra* 387 U.S. at 141, 87 S.Ct. at 1511, *quoting Rusk v. Cort*, 369 U.S. 367, 379–80, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962). *Accord, Southern Ry. Co. v. Seaboard Allied Milling Corp.*, —— U.S. ——, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (U.S.1979); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). *See also Morris v. Gressette*, 432 U.S. 491, 501, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977); *Dunlop v. Bachowski*, 421 U.S. 560, 567, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); *Barlow v. Collins*, 397 U.S. 159, 166, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 156–57, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

**9.** *See, e. g., Abbott Laboratories, supra*, 387 U.S. at 140–41, 87 S.Ct. 1507. *See generally* K. C. Davis, Administrative Law of the Seventies § 28.16 (1976); K. C. Davis, Administrative Law Treaties § 28.16 (1958 & Supp.1970); Saferstein, *Nonreviewability: A Functional Analysis of "Committed to Agency Discretion"*, 82 Harv.L.Rev. 367 (1968). *Compare* Berger, *Administrative Arbitrariness: A Synthesis*, 78 Yale L.J. 965 (1969).

**10.** *Ferry v. Udall*, 336 F.2d 706, 711 (9 Cir. 1964), *cert. denied*, 381 U.S. 904, 85 S.Ct. 1449, 14 L.Ed.2d 286 (1965).

Judicial reluctance to review agency decisions made under a grant of broad discretion has been justified by one commentator on two grounds:

First, without benefit of a statutory delineation of the limits of discretion it would be very difficult for courts to decide in particular cases whether there had been an abuse of discretion. . . . A second reason for judicial reluctance to review discretionary decisions is that exercises of broad discretion will only infrequently violate the standard of abuse of discretion, and it would be wasteful to entertain numerous suits, many surely frivolous, in order to correct the occasional abuse.

Saferstein, *supra* note 9, at 380–81.

It should be noted that the inclusion in the statutory scheme of some specific standard as a guide to administrative decisionmaking does not necessarily mean that the matter is reviewable. *See Schilling v. Rogers*, 363 U.S. 666, 675, 80 S.Ct. 1288, 1295, 4 L.Ed.2d 1478 (1960):

Beyond that, we think the Congressional decision to spell out in some detail certain limitations on the power it was conferring on the Executive was not designed to bestow rights on claimants, arising out of an assertedly too-narrow reading by the Executive of the discretionary power given him. Rather, we consider the specifications . . . as designed to provide guides for the Executive, thereby lessening the administrative burden of decision.

such broad terms that in a given case there is no law to apply.' S.Rep.No.752, 79th Cong. 1st Sess., 26 (1945)."

■ The existence of broad discretionary power in an agency often suggests that the challenged decision is the product of political, military, economic, or managerial choices that are not really susceptible to judicial review. Indeed, given the separation of powers between the judiciary and the other branches of government, it would appear unseemly in such circumstances for a court to substitute its judgment for that of an executive or agency official.[11] Judge Hastie summed up the lesson of earlier cases in this regard in the following manner:

A mere difference of judgment between a person disadvantageously affected by agency action and the responsible head of the agency over the merits of particular administration action as a means of achieving a legislative objective, when Congress has assigned authority to make and act upon such determinations to the agency, is not judicially reviewable. [Citations omitted] . . . [This is so, when] the statutory standard is expressed in such general concepts that it requires and must contemplate the exercise of discretion in choice among various rational alternatives none of which can fully satis-

fy all demands of competing interests. [Citation omitted]. Moreover, the absence of any provision in the [pertinent statute] for judicial review of the Secretary's determination suggests that Congress recognized that the [agency head] is at least as competent as a court to achieve such an accommodation of diverse and often conflicting social and economic interests as must be made . . . . We are concerned here with a type of determination that "does not present questions of an essentially legal nature in the sense that legal education and lawyers' learning afford peculiar competence for their adjustment". Frankfurter, J., concurring in *Driscoll v. Edison Light & Power Co.*, 1939, 307 U.S. 104, 122, 59 S.Ct. 715, 724, 83 L.Ed. 1134.[12]

In addition, we note that courts have been especially inclined to regard as unreviewable those aspects of agency decisions that involve a considerable degree of expertise or experience, or that are based upon economic projections and cost analyses, at least when the agency has broad leeway to devise the formula to be applied in any particular situation and when there are no discernible guidelines against which the agency decision may be measured. Thus, in *Panama Canal Co. v. Grace Line, Inc.*, 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958),

---

**11.** This aspect of the nonreviewability issue was starkly presented in *Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953), where the Supreme Court held that a government-trained physician who was lawfully inducted into the Army may not obtain judicial review of his assignments to duty. Speaking for the Court, Justice Jackson wrote:

We know that from top to bottom of the Army the complaint is often made, and sometimes with justification, that there is discrimination, favoritism or other objectionable handling of men. But judges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate

Army matters as the Army must be scrupulous not to intervene in judicial matters. While the courts have found occasion to determine whether one has been lawfully inducted and is therefore within the jurisdiction of the Army and subject to its orders, we have found no case where this Court has assumed to revise duty orders as to one lawfully in the service.

*Id.* at 93–94, 73 S.Ct. at 540. Other cases holding that challenges to the military's decisions were nonjusticiable have also turned on considerations related to the doctrine of separation of powers. *See, e.g., Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973); *Laird v. Tatum*, 408 U.S. 1 (1972). *See also Curran v. Laird*, 136 U.S.App.D.C. 280, 420 F.2d 122 (1969).

**12.** *Kendler v. Wirtz*, 388 F.2d 381, 383 (3 Cir. 1968).

the Supreme Court held that the ratemaking procedure and the tolls established for the Panama Canal fell within the "committed to agency discretion" exception to judicial review. The Court explained:

> As we have seen, the present conflict rages over questions that at heart involve problems of statutory construction and cost accounting: whether an operating deficit in the auxiliary or supporting activities is a legitimate cost in maintaining and operating the Canal for purpose of the toll formula. These are matters on which experts may disagree; they involve nice issues of judgment and choice, [State of] *New York v. United States*, 331 U.S. 284, 335, [67 S.Ct. 1207, 1234, 91 L.Ed. 1492,] which require the exercise of informed discretion. Cf. *United States ex rel. McLennan v. Wilbur*, 283 U.S. 414 [, 51 S.Ct. 502, 75 L.Ed. 1148]; *Interstate Commerce Commission v. Humboldt S.S. Co.*, 224 U.S. 474, 484–85 [, 32 S.Ct. 556, 559, 56 L.Ed. 849.] [13]

▇▇▇ Determination that a matter is unreviewable because it is committed to agency discretion does not, however, "slam[s] the door to the courthouse airtight." [14] Even when a court ascertains that a matter has been committed to agency discretion by law, it may entertain charges that the agency lacked jurisdiction, that the agency's decision was occasioned by impermissible influences, such as fraud or bribery, or that the decision violates a constitutional, statutory or regulatory command.[15] For the APA circumscribes judicial review only "*to the extent that . . agency action is committed to agency discretion by law;*" it does not foreclose judicial inquiry altogether.

## B. Plaintiffs' Challenge to the Army's Cost Analysis Studies

▇▇▇ The foregoing considerations lead to the conclusion that Congress never intended that the plaintiffs be afforded a judicial forum to contest the studies and evaluations that formed the basis for the Army's decision, inasmuch as that managerial decision and the studies and evaluations upon which it rested involved "questions of

---

**13.** *Panama Canal Co., supra*, 356 U.S. at 317–18, 78 S.Ct. at 757. *See also Rural Electrification Administration v. Northern States Power Co.*, 373 F.2d 686, 700 (8 Cir.), *cert. denied*, 387 U.S. 945, 87 S.Ct. 2079, 18 L.Ed.2d 1332 (1967) (citations omitted):

> The studied expertise of the Administrator, the Comptroller General and Congress as to the comparative cost studies, efficiency, flexibility and overall utility should remain in their capable hands and not the courts. The decisions entail engineering know-how and accounting procedures which the executive and legislative branches of government are better equipped to handle than the judiciary. The exercise of judgment by the Administrator, Congress or the Comptroller General invokes far more than performing a ministerial act. We are concerned with an area of the law "where generally the Executive and the Legislative are supreme."

However, where there is a specific statutory directive, such as that the benefits of a project exceed its cost, the matter has been held to be judicially reviewable. *See Concerned Residents of Buck Hill Falls v. Grant*, 537 F.2d 29, 34–35 (3 Cir. 1976).

**14.** *Wheelabrator Corp. v. Chafee*, 147 U.S.App.D.C. 238, 243, 455 F.2d 1306, 1311 (1971).

**15.** *See id.* 147 U.S.App.D.C. at 243–44, 455 F.2d at 1311–12; *Langevin v. Chenango Court, Inc.*, 447 F.2d 296 (2d Cir. 1971); *Curran v. Laird, supra*, 136 U.S.App.D.C. at 288–89, 420 F.2d at 130–31. Thus the primary effect of a determination that an action is committed to agency discretion by law is that the judiciary is precluded from entertaining a charge that the agency abused its discretion or acted unreasonably. As was stated in *Curran v. Laird, supra*, 136 U.S.App.D.C. at 289, 420 F.2d at 131 (footnote omitted),

> our decision does not contradict the principle that even where an official action is of a type which generally involves the exercise of discretion the court has power to inquire into a claim of abuse of discretion, or use of procedurally unfair and unauthorized techniques, inflicting injury on private citizens. The point of our decision is that there is a narrow band of matters that are wholly committed to official discretion, and that the inappropriateness or even mischief involved in appraising a claim of error or of abuse of discretion, and testing it in an evidentiary hearing, leads to the conclusion that there has been withdrawn from the judicial ambit any consideration of whether the official action is "arbitrary" or constitutes an abuse of discretion.

judgment requiring close analysis and nice choices." [16]

This conclusion is confirmed by an examination of the statutory scheme. Congress invested the head of every executive and military department with general authority to "prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." [17] The head of a department is permitted by statute to "delegate to subordinate officials the authority vested in him . . . by law to take final action on matters pertaining to the employment, direction, and general administration of personnel under his agency . . . ." [18] Furthermore, Congress instructed that "[u]nder regulations prescribed and administered by the Director of the Bureau of the Budget [now the OMB], each agency shall review systematically the operations of each of its activities, functions, or organization units, on a continuing basis," for the purpose of "determining the degree of efficiency and economy in the operation of the agency's activities, functions, or organization units . . . ." [19]

Applying the approach most recently employed by the Supreme Court in *Southern Ry. Co. v. Seaboard Allied Milling Corp.*, —— U.S. ——, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (U.S., 1979), we observe that the statute is, for the most part, "written in the language of permission and discretion." [20] Also,

> [t]he statute is silent on what factors should guide [a department's management-related decisions]; not only is "[t]he extent of this inquiry . . . not . . marked . . . with certainty," cf.

*United States v. Louisiana, supra,* 290 U.S. [70], at 77, [54 S.Ct. 28, at 32, 18 L.Ed. 181] but on the face of the statute there is simply "no law to apply" in determining if [a] decision is correct. Cf. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136. Similar circumstances have been emphasized in cases in which we have inferred nonreviewability. See *Barlow v. Collins,* 397 U.S. 159, 166 [, 90 S.Ct. 832, 25 L.Ed.2d 192]; *Schilling v. Rogers,* 363 U.S. 666, 674 [, 80 S.Ct. 1288, 1294, 4 L.Ed.2d 1478.] [21]

OMB Circular A–76, Department of Defense Directive 4100.15, and Army Regulation 235–5 likewise fail to provide meaningful criteria against which a court may analyze the Army's decision. In fact, the OMB Circular explicitly recognizes that "[n]o specific standard or guideline is prescribed for deciding whether savings are sufficient to justify continuation of an existing Government commercial activity and each activity should be evaluated on the basis of the applicable circumstances." [22] And although Army Regulation 235–5 identifies factors that must be considered in the decisionmaking process and specifies cost elements that must be included, it speaks only in general terms. As to the ultimate decision whether to continue a government activity, it announces that "no precise standard is prescribed in view of the varying circumstances." [23]

Perhaps most significant is the fact that the scales are weighted heavily against continuation of in-house operations by the Army. An in-house operation is deemed an exception to the general policy of relying on the private enterprise system, and "must be fully justified and supported by specific

---

16. *Panama Canal Co., supra,* 356 U.S. at 318, 78 S.Ct. at 758.

17. 5 U.S.C. § 301 (1976).

18. 5 U.S.C. § 302 (1976).

19. 5 U.S.C. § 305 (1976).

20. —— U.S. at ——, 99 S.Ct. 2388. *See also Ferry v. Udall, supra* 336 F.2d at 712 (drawing

distinction between "permissive type" statute and "mandatory type" statute).

21. —— U.S. at ——, 99 S.Ct. 2388 (footnote omitted).

22. OMB Circular No. A–76, ¶ 7c(3) (Revised August 30, 1967).

23. Army Regulation 235–5, Chapter 4–2c(2).

data" demonstrating that "a compelling reason" exists for the exception.[24] In addition, Army Regulation 235–5 sets as "a guide in assessing a confidence factor for the cost analysis" that "the cost of in-house operation ordinarily should be at least 10 percent less than the cost of obtaining the product or service from commercial sources." [25] Moreover, the Army is implicitly permitted to consider nonquantifiable and non-cost-related factors in deciding against continued in-house performance of a function,[26] thereby making possible the Army's reliance, in this case, on such benefits as greater flexibility in adjusting to workload fluctuations and the ability to reallocate manpower authorizations to support combat forces.[27] .

Thus the statutory and regulatory provisions do not provide rules or specifications that would permit a court to adjudicate plaintiffs' disagreements with the formulas, factors, and cost projections relied upon by the Army.[28] The absence of fixed stan-

**24.** *Id.* at Chapter 2. *See also* OMB Circular, *supra*, at ¶¶ 5 & 6.

**25.** ·*Id.* at Chapter 4–2c(2). At oral argument the contention was raised for the first time that this provision of Army Regulation 235–5 is invalid because it imposes a higher standard for continuing government operation of a function than is found in the OMB Circular, and that therefore an activity performed by government employees may be contracted out to a private concern only if a net cost savings results to the government. In view of the Circular's broad delegation to each agency of the responsibility to develop and implement appropriate instructions to carry out the policies outlined in the Circular this assertion is manifestly without merit.

**26.** *See AFGE, Local 1858 v. Hoffman*, 427 F.Supp. 1048, 1072–73 (N.D.Ala.1976).

**27.** *See* App. 149a. With respect to the implications of the Army's decision upon the manpower available to support combat forces, it is appropriate to recall this excerpt from *Curran v. Laird, supra*:

It is—and must—be true that the Executive should be accorded wide and normally unassailable discretion with respect to the conduct of the national defense and the prosecution of national objectives through military means. The power of the armed services to make their dispositions of men and *materiel*, and to take measures for the safeguarding of each does not admit of fragmentation.

36 U.S.App.D.C. at 288, 420 F.2d at 130, *quoting Overseas Media Corp. v. McNamara*, 128 U.S.App.D.C. 48, 54, 385 F.2d 308, 314 (1967) (emphasis found in *Curran*). *Compare Concerned Residents of Buck Hill Falls, supra* (determinations of Department of Agriculture regarding construction of a flood control dam held reviewable; court noting, 537 F.2d at 36, that "the subject matter requires no special expertise and is not of such a nature that judicial consideration is for any other reason impractical or inappropriate").

**28.** Moreover, rather than create a legally enforceable standard for the conduct of Army operations, these provisions appear to be primarily a loose managerial tool for implementing the government's stated policy of relying whenever possible on private concerns ·to supply its needs. *See Independent Meat Packers Ass'n v. Butz*, 526 F.2d 228, 236 (8 Cir. 1975) (challenged Executive Order "was intended primarily as a managerial tool for implementing the President's personal economic policies and not as a legal framework enforceable by private civil action.") Thus, it may be said that inasmuch as the Circular, DOD Directive, and Army Regulation "are merely internal operating procedures, rather than regulations officially promulgated under the APA or otherwise, they do not prescribe any rule of law binding on the agency," *Concerned Residents of Buck Hill Falls, supra*, 537 F.2d at 38, and cannot be used as the basis for an attack upon the Army's decision. *See also Cortright v. Resor*, 447 F.2d 245 (2 Cir. 1971), *cert. denied*, 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1972); note 10 *supra*. *Accord, AFGE, Local 1858 v. Hoffman, supra*, 427 F.Supp. at 1082. *Cf. American Farm Lines v. Black Bell Freight Service*, 397 U.S. 532, 538–39, 90 S.Ct. 1288, 1292–1293, 25 L.Ed.2d 547 (1970) (challenged procedural rules were "mere aids to the exercise of the agency's independent discretion," and "were not intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion"). It may also be doubted whether these provisions were intended to create a private right of action. *See Independent Meat Packers, supra* 526 F.2d at 236.

The inquiries whether the provisions in question create a legal claim and whether that claim is enforceable in a private suit by the plaintiffs may also be analyzed under the rubric of standing. For under the test articulated by the Supreme Court in *Association of Data Processing Service Organizations v. Camp, supra*, a person has standing to sue under the APA if he alleges, first, that the challenged action has caused him "injury in fact," and second, that the alleged injury was to an interest "arguably within the zone of interests to be protected or regulated

dards reflects an understanding that the type of decision made by the Army here is necessarily a matter of judgment and managerial discretion, and is by and large an inappropriate subject for judicial review. Accordingly, we hold that the substance of the Army's decisionmaking process, undertaken pursuant to these directives, is committed to agency discretion by law.[29]

## C. Plaintiffs' Remaining Contentions

Although we conclude that the decision by the Army here falls within the committed to agency discretion exception to reviewability, we still have the obligation, as mentioned earlier, to scrutinize the action taken in order to determine whether specific constitutional, statutory or regulatory dictates have been abridged. In their complaint, plaintiffs raise three specific violations of law, and we now consider each of them in turn.

First, plaintiffs contend that the RIFs were issued in contravention of 5 C.F.R. § 351.201, which is said to delimit the situations in which a RIF may legally be issued to a government employee. That regulation of the Civil Service Commission, however, allows the release of a government employee from employment when required by a "reorganization." As defined in 5 C.F.R. § 351.203(g), reorganization means "the planned elimination, addition, or redistribution of functions or duties in an organization." Elimination of the plaintiffs' jobs through the decision to contract out resulted from just such a reorganization, and is thus not assailable on this ground. Moreover, 5 C.F.R. § 351.201 merely describes the procedures to be utilized in decreasing the federal work force. The decision whether a particular position is to be preserved or abolished is for the agency to make.[30]

---

by the statute or constitutional guarantee in question." 397 U.S. at 152–53, 90 S.Ct. at 830. We refrain from deciding, however, that plaintiffs are not even "arguably within the zone of interests to be protected," for three reasons. First, little is gained in the way of analytic clarity by subsuming these inquiries under an analysis of standing, see Merriam v. Kunzig, 476 F.2d 1233, 1245 (3 Cir.), cert. denied, 414 U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973) (Adams, J., dissenting sur the denial of the petition for rehearing en banc). Second, decisions of this court have taken an expansive view of the "zone of interest" test, see, e. g. Concerned Residents of Buck Hill Falls v. Grant, supra, 537 F.2d at 33–34; Davis v. Romney, 490 F.2d 1360, 1363–65 (3d Cir. 1974); Merriam v. Kunzig, supra. Third, application of the test has proven difficult in the absence of guidelines by the Supreme Court, see, e.g., Tax Analysts & Advocates v. Blumenthal, 184 U.S.App.D.C. 238, 260, 566 F.2d 130, 152 (1977), cert. denied, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978) (majority and dissenting opinions).

**29.** Accord, AFGE, Local 1858 v. Hoffman, supra; AFGE, Local 1668 v. Dunn, Civil No. A–75–156 (D. Alaska, Sept. 30, 1975), aff'd on other grounds, 561 F.2d 1310 (9 Cir. 1977). But see AFGE, Local 190 v. Middendorf, Civil No. 75–407 (D.R.I., Sept. 15, 1976) (denial of government's motions for dismissal and for summary judgment). See also Perkins v. Rumsfeld, 577 F.2d 366 (6 Cir. 1978) (Army decision to transfer operations from one facility to another is committed to agency discretion by

10 U.S.C. § 125); Bielec v. United States, 456 F.2d 690, 695, 197 Ct.Cl. 550 (Ct.Cl.1972) ("Reorganization of government positions is peculiarly within the authority and discretion of agency officials.")

Though not dissimilar to the government actions challenged in these cases, attacks upon government procurement decisions by disappointed bidders have been held to be reviewable. See e. g., Merriam v. Kunzig, supra; Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App. D.C. 371, 386–87, 424 F.2d 859, 874–75 (1976). In those situations, however, the detailed bidding regulations and the requests for proposals provide an amply specific standard against which the government's conduct can be measured. Even so, both the extent of review of procurement decisions and the availability of relief have been severely circumscribed, see M. Steinthal & Co. v. Seamans, 147 U.S.App.D.C. 221, 455 F.2d 1289 (1971), and as to some aspects have been held unreviewable altogether, see Wheelabrator Corp. v. Chafee, supra.

**30.** See Federal Personnel Manual 351.1–2c:

Planning the work program and organizing the workforce to accomplish agency objectives within available resources are management responsibility. Only the agency can decide what positions are required, where they are to be located, and when they are to be filled, abolished, or vacated. The agency determines when there is a surplus of employees at a particular location in a particular kind of work.

Plaintiffs also assert that since many of the class members are veterans, they are protected from discharge by the various statutory and regulatory provisions granting preference in government employment to veterans. According to plaintiffs, these provisions create a reasonable expectation of continued employment or tenure, unless there is sufficient cause for removal. This due process property interest, the argument continues, is sufficiently strong to withstand the allegedly arbitrary, capricious and illegal actions by the Army that would deprive the plaintiffs of such rights.

 The flaw in this argument is that it reads too much into the provisions granting preferences to veterans. Whatever property interest the members of the class may have, its substantive dimensions are defined by the law that created it.[31] Nothing in the civil service statute or regulations prohibits the government from abolishing positions held by veterans or other civil servants and contracting out the work previously performed by them. Indeed, as discussed above, 5 C.F.R. § 351.201 specifically allows the issuance of RIFs pursuant to a reorganization. Stripped of this purported property interest, plaintiffs' argument is no more than an attempt to secure judicial review of an action that is alleged to be arbitrary and capricious. But, as we have already held, such action is committed to agency discretion by law and is therefore unreviewable.

Finally, plaintiffs allege that the contracting out in this case constitutes an illegal personal service contract under the guidelines laid down in the Pellerzi Standards and the Mondello Supplement, promulgations that are intended to prevent "the procuring of services by contract in such a manner that the contractor or his employee are in effect employees of the government."[32] Plaintiffs are precluded, however, from obtaining judicial review of this claim at this time because they failed to exhaust the elaborate administrative remedy that was available to them.[33]

### III.

In view of the foregoing, the judgment of the district court will be affirmed.

---

**31.** *See, e. g., Bishop v. Wood,* 426 U.S. 341, 344–45, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

**32.** 32 C.F.R. 22.102–1. As originally set forth in a letter opinion by Mr. Pellerzi, the former General Counsel of the Civil Service Commission, and as later supplemented in a letter opinion by Mr. Mondello of the Civil Service Commission, these standards are intended to serve as a guideline for determining when a contract constitutes the procurement of personal services and thereby infringes upon the rights of civil service employees. *See generally Lodge 1858, AFGE v. Webb,* 188 U.S.App.D.C. 233, 580 F.2d 496, *cert. denied,* 439 U.S. 927, 99 S.Ct. 311, 58 L.Ed.2d 319 (1978).

**33.** Under the Intra-Executive Department Procedure, the Civil Service Commission is authorized to investigate any complaint that the Pellerzi Standards have been violated; in the event a violation is found, to consult with the agency concerned to determine whether they can agree on the corrective action that should be taken; and, if no agreement is reached, to submit the matter for final resolution at the Presidential level. In the present case, individual plaintiffs who filed RIF appeals with the Civil Service Commission were informed that the Commission could not investigate the allusions in their complaints to violations of the Pellerzi Standards unless additional information were submitted. App. at 191a. Plaintiffs neglected to pursue this avenue for relief, and have advanced no basis for us to disregard the requirement that they first exhaust their administrative remedies. *See AFGE, Local 1668 v. Dunn,* 561 F.2d 1310, 1314–15 (9 Cir. 1977). *See also AFGE, Local 1904 v. Resor,* 442 F.2d 993 (3 Cir. 1971).