Nancy GATTER et al.

v.

Max CLELAND et al.

Civ. A. No. 79–2296.

United States District Court,
E. D. Pennsylvania.

April 13, 1981.

Bonnie P. Bazilian, Community Legal Services, Philadelphia, Pa., Mark Kaufman, Delaware County Legal Assistance Ass'n, Inc., Darby, Pa., for plaintiffs.

Antoinette R. Stone, Asst. U. S. Atty., Philadelphia, Pa., for federal defendants.

Mari M. Gursky, Philadelphia, Pa., for Fidelity Bond & Mortgage Co. and Lomas & Nettleton Co.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

This class action suit filed pursuant to the Veteran's Benefit Act of 1958 (38 U.S.C. § 1801 et seq.) is before this Court on cross-motions for summary judgment. Plaintiffs, Nancy Gatter and Kenneth and Alma Marie Bernstein, are homeowners with mortgages guaranteed or insured by the Veteran's Administration (VA). Plaintiffs, on behalf of themselves and the class they represent,[1] are seeking declaratory and injunctive relief pursuant to 38 U.S.C. § 1801 et seq. the Fifth Amendment of the United States Constitution, and the Administrative Proce-

dure Act (APA) 5 U.S.C. § 701 et seq. requiring VA implementation of a refunding program for their mortgages destined for foreclosure. Individually, plaintiffs request an order in the nature of a mandamus requiring the VA to accept assignments of their mortgage loans. For the reasons discussed hereafter, the Federal defendant's motion is granted. Under the Veteran's Home Loan Guaranty and Insurance Program, 38 U.S.C. § 1801 et seq., before suit on or foreclosure of a delinquent loan may occur, the lender must notify the VA of default, 38 U.S.C. § 1816(a) and the VA may within 30 days exercise its option to take an assignment of the mortgage to relieve the private lender of his risk of loss. If such assignment is accepted by the VA, the private mortgagee pursuant to VA Regulation 4318 (38 C.F.R. 36.4318) assigns the defaulted mortgage to the VA and the mortgagor veteran makes monthly payments to the VA based on a repayment plan.

Plaintiffs, who defaulted on their VA guaranteed loans, contend that the Federal defendants have: 1) failed to implement any mortgage refunding program for VA guaranteed mortgages 2) failed to notify plaintiffs of their right to be considered for refunding of their mortgages and 3) failed to establish criteria for refunding which, if applied, would implement Congressional intent concerning refunding. Plaintiffs further assert that they are entitled to a hearing before an adverse decision is made by the VA.

Plaintiff, Nancy Gatter and her husband William, a Marine Corp Veteran, purchased a home at 6712 Vandike Street, Philadelphia, Pa. on November 16, 1973 for $16,000. A Mortgage in this amount was obtained from the defendant, Fidelity Bond and Mortgage Co. The terms of the mortgage required the Gatters to pay $68.00 per month for 30 years. This loan from Fidelity was guaranteed by the VA because William Gatter's veteran status entitled him to

1. This Court, in a memorandum opinion filed May 16, 1980, granted plaintiffs' motion for class certification pursuant to Rule 23(a) and (b)(2). *Gatter v. Cleland*, No. 79–2296 (E.D. Pa., May 16, 1980).

this benefit under the Veterans Housing Program established by the Veteran's Benefit Act of 1958, 38 U.S.C. § 1801 *et seq.*

Plaintiff and her husband met their monthly mortgage obligation until October 1977 when William Gatter's financial status deteriorated rendering him unable to make further payments.

On or about December 27, 1977, Donald E. Schneider, Fidelity's servicing agent completed VA Form 26–6850 (Notice of Default) and sent it to the VA, thus giving notice of Gatter's default for the months of October, November, and December 1977.

On or about January 5, 1978, Schneider completed VA Form 26–6851 (Notice of Intent to Foreclose) and sent it to the VA, giving notice of the mortgagee's intention to foreclose.

During this time, the Gatters experienced marital difficulties that resulted in William Gatter's leaving the family residence in March 1978, and causing the mortgage account to become further delinquent.

On April 17, 1978 Fidelity filed a complaint in mortgage foreclosure against the Gatters. This suit is still pending.

Both before and after suit in mortgage foreclosure, the Gatters discussed the possibility of foreclosure with VA personnel. Plaintiff alleges that neither she or her counsel was ever informed of the existence of the refunding program, while defendants

claim that refunding the Gatters' mortgage was considered. Plaintiff claims that the only assistance offered by VA personnel was the advice to secure funds to cure the mortgage default.

The facts regarding plaintiff Bernsteins' VA guaranteed loan are similar to the Gatters. The Bernsteins purchased a home in Philadelphia in September 1977 for approximately $29,000. Lomas Nettleton financed this purchase and took a VA guaranteed mortgage. Under the terms of the mortgage, Bernstein was to pay $273.00 per month for 30 years. In June 1978, Kenneth Bernstein lost his job which reduced his income from $17,000 to $7,500 per year. Subsequently, in September 1978, Bernstein developed lung cancer forcing him not to work and to depend on welfare payments of $552.00 per month. The Bernsteins asked Lomas to accept partial payments until Kenneth Bernstein was awarded his Social Security disability benefits, but the company refused to accept this repayment plan. On March 6, 1978 Lomas & Nettleton filed suit to foreclose the mortgage and this suit is still pending. The Bernsteins argue that the VA never informed them of the availability of the refunding program.

The parties have stipulated and accordingly I find that the VA has not set up a program for the assignment of mortgages pursuant to 38 U.S.C. § 1816(a).[2] It is also

---

**2.** As of June 30, 1979, there were approximately 377,000 outstanding guaranteed mortgages serviced by the VA Center in Philadelphia. (Defendant's Answer to Plaintiffs' Interrogatory # 14). From 1973 until 1979, approximately 8000 mortgages were guaranteed each year. (Defendant's Answer to Plaintiff's Interrogatory # 15). During the years 1977 through 1979, an average of 3500 guaranteed mortgages per year went into default. The number of foreclosures in those are as follows: 1977—705, 1978 —885, 1979 (as of 6–30–79)—451. (Defendant's Answer to Plaintiff's Interrogatory # 16). The VA has refunded one mortgage during the years 1977 through 1979. (Defendant's Answer to Plaintiff's Interrogatory # 24).

Notwithstanding these statistics and the parties' stipulation which establishes that no refunding program exists, VA Manual DVB M–26–3 § 2.39 p. 41–42, DVB Circular 26–30–3 (Jan. 17, 1980) and DVB Circular 26–78–21 (July 17, 1978) suggest the contrary.

Specifically, DVB Circular 26–30–3 (Jan. 17, 1980) states:

"A decision of whether or not to refund a loan for an authorized purpose will be made on each guaranteed loan prior to foreclosure."

"Every decision or refunding will be documented in the loan folder, including the reason that refunding is or is not being approved."

Also, DVB Circular 26–78–21 (July 17, 1978) sets forth criteria for VA employees to consider in determining a mortgagor's eligibility for refunding. They are:

(a) The default was not willful; i. e. cause of default was due to circumstances beyond the veteran's control;

(b) The veteran wants to retain the property;

(c) The veteran has demonstrated a willingness to cooperate with the VA and the holder to reinstate the loan; and

undisputed that the VA has not and does not presently intend to notify mortgagors or lendors that it has a program by which it will consider accepting assignment of mortgages that are in default. As the parties have at conference stated their positions and waived formal oral argument and since there are no material facts in dispute, this matter is now ripe for summary judgment.

The issue of whether the VA's non-implementation of a mortgage refunding program is judicially reviewable is controlled by § 10 of the Administrative Procedure Act (APA). 5 U.S.C. § 702 (1976) mandates that judicial review be available to those persons adversely affected or aggrieved by agency action. However, 5 U.S.C. § 701(a) (1976) provides two exceptions to judicial review of agency action: (1) statutes preclude judicial review (2) or where agency action is committed to agency discretion by law.

■ Because § 1816(a) does not specifically preclude judicial review, we must determine whether agency action regarding the non-implementation of a refunding program falls within the committed to agency discretion exception. The Supreme Court has warned that it will not "lightly interpret a statute to confer unreviewable power on an administrative agency" for the "ultimate analysis is always one of Congress' intent." *Southern Ry. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 454, 99 S.Ct. 2388, 2394, 60 L.Ed.2d 1017 (1979). Congress' intent to restrict access to judicial review must appear from "clear and convincing evidence." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The committed to agency discretion exception is a narrow one and the legislative history of the APA indicates that it is applicable in those rare instances when "statutes are drawn in such broad terms that in a given case there is no

law to apply." S.Rep.No.752, 79th Cong. 1st Sess., 26 (1945). *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1970).

The Third Circuit has suggested three criteria which bear upon a determination of unreviewability:

1) The broad discretion given an agency in a particular area of operation.

2) The extent to which the challenged agency action is the product of political, economic or managerial choices that are inherently not subject to judicial review.

3) The extent to which the challenged agency action is based upon some special knowledge or expertise.

*Local 2855, AFGE (AFL–CIO) v. United States*, 602 F.2d 574, 578–79 (1979), *See also Bramley v. Webster*, 476 F.Supp. 351, 352 (E.D.Pa.1979).

■ Application of the foregoing principles to the relevant statute 38 U.S.C. § 1816(a) lead to the conclusion that the Administrator's option to set-up a refunding program falls within the committed to agency discretion exception of 5 U.S.C. 701(a)(2).

38 U.S.C. § 1816(a) provides:

§ 1816 Procedure on default.

(a) In the event of default in the payment of any loan guaranteed under this chapter, the holder of the obligation shall notify the Administrator who shall thereupon pay to such holder the guaranty not in excess of the pro rata portion of the amount originally guaranteed, and shall be subrogated to the rights of the holder of the obligation to the extent of the amount paid on the guaranty. Before suit or foreclosure the holder of the obligation shall notify the Administrator of the default, and within thirty days thereafter the *Administrator may, at the Administrator's option*, pay the holder of the

---

(d) The refunding or assignment will be in the best interests of the VA; i. e., foreclosure will be avoided and will thereby minimize losses to the Government as a result of claim payments.

Since the parties agree that no formal refunding program currently exists, it is not necessary

for this Court to determine whether, under such a program, the application of the above guidelines in the VA's consideration, selection or denial of a mortgage for funding would offend due process.

obligation the unpaid balance of the obligation plus accrued interest and receive an assignment of the loan and security. Nothing in this section shall preclude any forbearance for the benefit of the veteran as may be agreed upon by the parties to the loan and approved by the Administrator. The Administrator may establish the date, not later than the date of judgment and decree of foreclosure or sale, upon which accrual of interest or charges shall cease.

(emphasis added).

With respect to the Administrator's power to grant refunding, § 1816(a) is written in the language of permission and discretion. This provision states that the "Administrator may, at the Administrator's option," receive an assignment of a loan from a defaulting veteran. Defendants contend that Congress' intent to vest complete discretion in the Administrator is not only indicated through the usual "language of permission and discretion," "the Administrator may" *Southern Ry. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979), but is emphasized through Congress' deliberate insertion of the phrase "at the Administrator's option." Relying on *Southern* and *Local 2855*, defendants argue that the statute is silent on what factors should guide the Administrator's decision and, therefore, on the face of the statute there is simply no "law to apply" in determining if the Administrator's decision to grant or deny refunding in any given case is correct. Moreover, the VA Regulations regarding refunding 38 C.F.R. 36.4318 provide no standards to supplement § 1816(a) to guide the exercise or review of the Administrator's refunding option.[3]

■ Nevertheless plaintiffs' central claim is that the VA's total failure to implement an assignment program in the Philadelphia area is reviewable.[4] They argue that no matter how broad the discretion not to take an assignment in a particular case, the statute and the regulatory framework require the VA to have an assignment program and to consider each mortgage in default for refunding on a case-by-case basis. Plaintiffs rely heavily upon three VA manuals and circulars to support their position that there is law to apply in *Overton Park* terms.[5]

A similar issue was before this Court in *Feldman v. HUD*, 430 F.Supp. 1324 (E.D.Pa. 1977). In *Feldman*, Judge Ditter held that HUD handbooks and circulars were agency internal operating procedures and therefore

---

**3.** 38 C.F.R. § 36.4318 provides:
 (a) Upon receiving notice of default or a claim for a guaranty or a notice under § 36.4317, the Administrator *may* within 30 days thereafter require the holder upon penalty of otherwise losing the guaranty or insurance to transfer and assign the loan and the security therefor to the Administrator or to another designated by him upon receipt of payment in full of the balance of the indebtedness remaining unpaid to the date of such assignment. Such assignment may be made without recourse but the transferor shall not thereby be relieved from the provisions of § 36.4325. (Emphasis added.)

**4.** Plaintiffs have not argued that an implied right of action exists under the VA statute, but rather contend that they are entitled to relief under the APA, 5 U.S.C. §§ 703 *et seq.* for the VA's wilful failure to implement a mortgage refunding program. Nevertheless, the Government has asserted in its brief accompanying its motion for summary judgment that the VA statutes do not provide a private right of action, express or implied, to set aside a mort-

gage foreclosure or compel the implementation of a mortgage refunding program. By letter dated February 12, 1981 plaintiff's counsel acknowledged that a recent decision of the Court of Appeals for the District of Columbia held that there was no implied private right of action by a veteran where neither the veterans benefits statutes nor the regulations expressly created such a cause of action and the veteran had not satisfied *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) criteria necessary for implying such a cause of action. *Simpson v. Cleland*, 640 F.2d 1354, 1359, 1360 (D.C.Cir. Jan. 16, 1981). Although plaintiffs' attempt in their letter to distinguish *Simpson* from the instant case, we agreed with the D.C. Circuit's conclusion that the veterans benefits statutory scheme and VA publications do not create an express right of action and the *Cort v. Ash* requirements have not been satisfied to imply one.

**5.** *See* note 2 *supra* for the text of these circulars.

did not constitute law to apply to allow the court to review a rent increase decision made by the Secretary of Housing and Urban Development. The court distinguished *Overton Park* where the Secretary had statutory guidelines to follow from the absence of statutory guidelines for rent increases.

"In order for a regulation to have the 'force and effect of law,' it must have certain substantive characteristics and be the product of certain procedural requisites." *Chrysler Corp. v. Brown*, 441 U.S. 281, 301, 99 S.Ct. 1705, 1717, 60 L.Ed.2d 1078 (1979). These directives contained in the VA Manual and Circulars do not possess the necessary characteristics of binding agency law. They were not officially promulgated pursuant to publication and comment requirements of APA 5 U.S.C. § 552(a)(1)(D) and they reflect no more than VA policy pronouncements on refunding to assist VA employees in the servicing of guaranteed loans. *Fitzgerald v. Cleland*, 498 F.Supp. 341 (D.Me.1980).

In *Concerned Residents of Buck Hill Falls v. Grant*, 537 F.2d 29 (3d Cir. 1976), similar guidelines were held nonbinding. The Court reasoned that "since the Guide and the Handbook are merely internal operating procedures, rather than regulations promulgated under the APA or otherwise, they do not prescribe any rule of law binding on the agency." 537 F.2d at 38. The VA Manual and Circulars do not set forth statutory criteria which can be applied to permit judicial review. Congress did not mandate them, but rather placed the decision to refund entirely within the Administrator's discretion. Moreover, there is no legislative history suggesting standards to govern the Administrator's option to take an assignment. The permissive language of § 1816(a) and VA Regulation 4318 pull in the direction of nonreviewability. This pull

is even more pronounced by the fact that Congress in § 1816(a) specifically limited the Administrator's discretion by use of the mandatory work "shall" in requiring the Administrator to pay the holder of the obligation. Clearly, this change from mandatory to permissive language in the same statute regarding the evinces Congress' intent to make refunding a discretionary decision. Therefore, under the *Local 2855* criteria, § 1816(a) vests broad discretion in the VA regarding refunding decisions and therefore satisfies the first criteria for unreviewability. It also satisfies the second and third criteria, because any refunding decision would necessarily involve economic and managerial considerations that would be best left to the skill and expertise of the VA. *Local 2855, supra* at 479–80, *Pullman Incorp. v. Volpe*, 337 F.Supp. 432, 436–37 (E.D.Pa.1971). Because such choices would be prudently left within the discretion of the VA, we hold that the decision to implement a formal refunding program is one that squarely falls within the committed to agency discretion exception and is not subject to judicial review.[6]

Although we conclude that the VA's non-implementation of a refunding program falls within the committed to agency discretion exception, we are obligated to determine whether any specific constitutional, statutory, or regulatory commands have been violated. *Local 2855, AFGE (AFL–CIO) v. United States*, 602 F.2d 574, 580 (3d Cir. 1979). Plaintiffs contend that the statute (§ 1816a) and the regulatory scheme demonstrate that plaintiffs' have a protected property interest to fair access to the VA home loan assignment program that blossoms into a constitutionally protected property interest when a defaulting borrower meets the established VA criteria for refunding.

---

**6.** Our decision is in accordance with *Fitzgerald v. Cleland*, 498 F.Supp. 341 (D.Me.1980) which held that the VA's decision not to refund plaintiff's mortgage fell within the committed to agency discretion exception. The court stated that "[t]he statute [§ 1816a] 'is as open-ended as it could conceivably be ... Because no ... standards are set forth according to which the [VA] must exercise its discretion, a court has quite literally no indicia by which it may evalu-

ate that exercise and hence no power of review under § 701(a)(2).'" *Fitzgerald v. Cleland*, 498 F.Supp. 341 (D.Me.1980) (citing *Greater New York Hospital Assoc. v. Mathews*, 536 F.2d 494, 497–98 (2d Cir. 1976)). We are aware of a contrary ruling announced in *Rank v. Cleland*, 460 F.Supp. 920 (C.D.Cal.1978). However, we find *Rank* to be unpersuasive precedent because the court did not address itself to the APA's unreviewability standards.

Whatever legitimate claim of entitlement the class members may have, its "substantive dimensions are defined by the law that created it." *Local 2855, supra* at 584. As we have already stated, nothing in 38 U.S.C. § 1816(a) or VA Regulation 38 C.F.R. § 36.4318 mandates that the VA set up a refunding program. In fact both the statute and the regulation vest the VA Administrator with unfettered discretion to determine whether in any given case to confer the benefit of VA refunding on a defaulting veteran. Moreover, DVB Circular 26–78–21 (July 17, 1978) upon which plaintiffs base their claim of entitlement specifically states that a factor to be considered in making a determination regarding refunding is that it "be in the best interests of the VA." For these reasons, we find that plaintiffs do not possess a property interest sufficient to allow judicial review of the VA's nonimplementation of a formal refunding program.

Accordingly, we grant defendants' motion for summary judgment.