Nancy GATTER, Mary Klingel, and Kenneth and Alma Bernstein, individually, and on behalf of all others similarly situated, and Carl Nardi and Marie Nardi

v.

Robert T. NIMMO, in his official capacity as Administrator of Veterans Affairs, S. W. Melidosian, in his official capacity as Director of the Veterans Administration Center of Philadelphia, The Veterans Administration, An Agency of the United States Government, The Fidelity Bond and Mortgage Company, The Kennedy Mortgage Company, The Lomas and Mettleton Company.

Appeal of Nancy GATTER, Carl Nardi and Marie Nardi, Kenneth Bernstein and Alma Marie Bernstein, on behalf of themselves and all others similarly situated.

No. 81–1881.

United States Court of Appeals, Third Circuit.

Argued Feb. 4, 1982.

Decided March 11, 1982.

Douglas G. Dye (argued), Bruce Fox, George Gould, Community Legal Services, Inc., Philadelphia, Pa., Mark Kaufman, Darby, Pa., for appellants.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., Peter F. Vaira, Jr., U. S. Atty., Philadelphia, Pa., William Kanter, John F. Cordes (argued), Dept. of Justice, Washington, D. C., for appellees.

Before GIBBONS, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

In this class action plaintiffs Gatter, et al. (the Veterans) appeal from the grant of a summary judgment in favor of the Veterans' Administration (VA) in their suit for declaratory and injunctive relief. The class consists of veterans who are obligors on bonds and mortgages guaranteed by the VA pursuant to Title III of the Servicemen's Readjustment Act of 1944 as amended,[1] and have defaulted or may default in payments due on those obligations. They contend that the VA should have notified each defaulting Veteran of the opportunity to apply to that agency for refunding and to avoid foreclosure. They rely on a section of the Act which provides in relevant part:

> In the event of default in the payment of any loan guaranteed under this chapter, the holder of the obligation shall notify the Administrator who shall thereupon pay to such holder the guaranty . . . and shall be subrogated to the rights of the holder of the obligation to the extent of the amount paid on the guaranty. *Before suit in foreclosure the holder of the obligation shall notify the Administrator of the default, and within thirty days thereafter the Administrator may, at the Administrator's option, pay the holder of the obligation the unpaid balance of the obligation plus accrued interest and receive an assignment of the loan and security.* Nothing in this section shall preclude any forebearance for the benefit of the veteran as may be agreed upon by the parties to the loan and approved by the Administrator.[2] (Emphasis supplied).

The Veterans contend that Congress mandated, by the italicized language, the establishment of a mortgage refunding program under which the VA would, for the Veterans' benefit, acquire defaulted mortgages from the original lenders and enter into new payment arrangements. They charge, and in reviewing the grant of a summary judgment we must assume, that the VA has failed to implement a mortgage refunding program, failed to notify class members of the opportunity for refunding, and failed to establish criteria for refunding eligibility. The District Court held that the option in the statute of taking assignments and working out refunding arrangements is a matter committed to agency discretion

---

1. 38 U.S.C. § 1801, *et seq.*

2. 38 U.S.C. § 1816(a). This provision originated in Section 506 of the 1945 Amendments to the Servicemen's Readjustment Act of 1944. Act of Dec. 28, 1945, Pub.L. No. 79–268, § 506, 59 Stat. 630.

within the meaning of the Administrative Procedure Act (APA), 5 U.S.C. § 701(a)(2) (1976), and thus not judicially reviewable.[3] We affirm.

We recognize that the APA's "generous review provisions must be given a 'hospitable' interpretation," *Shaughnessy v. Pedriero*, 349 U.S. 48, 51, 75 S.Ct. 591, 594, 99 L.Ed. 868 (1955). The rule of statutory interpretation of federal agency statutes is that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should courts restrict access to judicial review." *Rusk v. Cort*, 369 U.S. 367, 379–80, 82 S.Ct. 787, 794, 7 L.Ed.2d 809 (1962). Important evidence of an intent to provide for nonreviewability is the existence of *broad* rather than circumscribed discretionary power. *Southern Railroad Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 455, 99 S.Ct. 2388, 2394, 60 L.Ed.2d 1017 (1979). When a statute is drawn granting such broad discretion as to provide no law to apply, there is a strong indication that the "committed to agency discretion" exception in the Administrative Procedure Act was intended to apply. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). And the fact that a specific statute was enacted primarily to safeguard interests of the government rather than those of some protected class is significant evidence that the agency's exercise of discretion was intended to be unreviewable. *See Local 2855, AFGE (AFL–CIO) v. United States*, 602 F.2d 574, 581 (3d Cir. 1979); *Merriam v. Kunzig*, 476 F.2d 1233, 1242 (3d Cir.), *cert. denied*, 414 U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973).

The statute on which the Veterans rely certainly uses the language of broad discretion. It says that "the Administration *may*, at the Administrator's *option*" pay to the mortgagee the unpaid balance of the loan and take an assignment. Reiteration of two words in the same sentence negating obligation is a compelling indication of such discretion. As importantly, the whole section contains no standards informing the exercise of that discretion. There are, moreover, indications that the section was intended primarily to afford flexibility in administering the governmental liability resulting from defaults; that it is primarily for the aid of the government, not of veterans.

It is true, as the Veterans contend, that the overall mortgage guaranty program is intended for the benefit of veterans. But what little evidence there is of the reasons for the clause dealing with assignments suggests that it was not intended to enlarge that benefit. In 1944, when the loan guaranty program was enacted, the statute provided:

> No security for the guaranty of a loan shall be required except the right to be subrogated to the lien rights of the holder of the obligation which is guaranteed: *Provided*, that pursuant to regulations to be issued by the Administrator the mortgagor and mortgagee shall agree that before beginning foreclosure proceedings for default in payment of principal or interest due, the Administrator shall have at least thirty days' notice with the option of bidding in the property on foreclosure or of refinancing the loan with any other agency or by any other means available.[4]

Plainly this provision required that the loan documents provide a nationally uniform means for affording to the VA as surety an opportunity to safeguard its interests in the security for the guaranty. Title III of the Servicemen's Readjustment Act was not a government loan program, but a suretyship program.

In 1945 Title III of the Servicemen's Readjustment Act was substantially amended by the addition of Section 509(a) giving the Administrator administrative powers with respect to properties which might come into the government's hands as a result of de-

---

**3.** *Gatter v. Cleland*, 512 F.Supp. 207 (E.D.Pa. 1981).

**4.** Servicemen's Readjustment Act of 1944. Pub.L. 78–346, § 500(b), 58 Stat. 291.

faults.[5] That same law modified the notice of default provision to read:

In the event of default in the payment of any loan guaranteed under this title, the holder of the obligation shall notify the Administrator who shall thereupon pay to such holder the guaranty not in excess of the pro rata portion of the amount originally guaranteed, and shall be subrogated to the rights of the holder of the obligation to the extent of the amount paid on the guaranty: *Provided*, That prior to suit or foreclosure the holder of the obligation shall notify the Administrator of the default, and within thirty days thereafter the Administrator may, at his option, pay the holder of the obligation the unpaid balance of the obligation plus accrued interest and receive an assignment of the loan and security: *Provided further*, That (1) nothing herein shall be construed to preclude any forbearance for the benefit of the veteran as may be agreed upon by the parties to the loan and approved by the Administrator; and (2) the Administrator may establish the date, not later than the date of judgment and decree of foreclosure or sale, upon which accrual of interest or charges shall cease.[6]

The Veterans contend that in this 1945 legislation Congress intended to benefit defaulting obligors rather than protect the government as surety. They note that in H.R. 3749, the House version of the 1945 amendments, the equivalent section read:

In the event the veteran defaults in the payment of his loan and after suit or foreclosure and sale the deficiency is determined, then upon notification from the lender, the Administrator of Veterans' Affairs shall pay to the lender its guaranty ... and be subrogated to the rights of the lender to the extent of the amount paid on the guaranty: *Provided*, that prior to suit or foreclosure the lender shall notify the Administrator, and within 30 days thereafter the Administrator may, at his option, pay the lender the unpaid

balance of the loan plus accrued interest and receive an assignment of the loan and security and *thereafter sue or foreclose in the name of the Veteran's Administration.* (Emphasis supplied).

As finally enacted in 1945 the italicized language of H.R. 3749 was deleted and was replaced by the sentence "nothing herein shall be construed to preclude any forbearance for the benefit of the veteran as may be agreed upon by the parties to the loan and approved by the Administrator." The Veterans rely on this substitution as establishing a Congressional intent to confer benefits on defaulters.

The change in language, in light of the preceding legislation, cannot be so understood. The 1944 law obligated the VA, as surety, to pay immediately upon default, and to protect the government's interest only by pursuing subrogation or indemnity remedies. What the 1945 amendments introduced was the provision that the government's obligation as surety did not arise until after the obligor foreclosed and established the amount of the deficiency, but that, at its option, the VA could still proceed in the manner provided in the 1944 Act, by paying its obligation prior to foreclosure and pursuing its own subrogation and indemnity remedies. The deletion from H.R. 3749 and the addition of the language relied upon by the Veterans simply gave the VA as surety a third option, of agreeing with the lender and the obligor that the loan could be refinanced after a default, thereby avoiding the necessity of making a payment on the guaranty. That all three options were intended solely for the benefit of the surety is confirmed by the simultaneously enacted provisions in Section 509 giving the Administrator authority to

(3) Pay, or compromise, any claim on, or arising because of, any such guaranty or insurance;

(4) Pay, compromise, waive or release any right, title, claim, lien or demand,

---

5. Act of Dec. 28, 1945, Pub.L. No. 79–268, § 509(a), 59 Stat. 631 (current version at 38 U.S.C. § 1820(a)).

6. *Id.* at § 506.

however acquired, including any equity or right of redemption.[7]

In that same section Congress provided that "[t]he financial transactions of the Administrator incident to, or arising out of, the guaranty of loans pursuant to this title, and the acquisition, management, and disposition of property, real, personal or mixed, as incident to such activities and pursuant to this section, shall be final and conclusive upon all officers of the Government."[8] The provisions of Section 506 of the 1945 law must, we think, be read in conjunction with Section 509(a) and (c). Together, they make clear that Section 506 was enacted solely in the interest of the government as surety, not of defaulting obligors.

 The Veterans contend that even if the statute cannot be construed to provide standards for the exercise of discretion in their interest, such standards may be found in several internal VA publications. These consist of (1) Manual M 26–3 § 2.39(d), which lists four criteria for refunding of guaranteed loans; (2) DVB Circular 26–80–3 (January 17, 1980), which sets forth for VA employees the agency's general policies respecting loan servicing and refunding; and (3) DVB Circular 28–78–21 (July 17, 1978), which lists refunding criteria supplementing those in Manual M 26–3. These, the Veterans urge, supply a law to apply in judicial review, and should be enforced. We do not agree. The documents satisfy none of the criteria which have been developed by the courts to determine whether agency regulations have the force of law. *See generally, Chrysler Corp. v. Brown,* 441 U.S. 281, 301–03, 99 S.Ct. 1705, 1717–18, 60 L.Ed.2d 208 (1979). They have never been published in the Federal Register. They have not been promulgated with the procedural requirements for rulemaking. They have never been intended for or used by anyone other than VA employees. The manual and circulars must be characterized as "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). Such non-substantive rules are not judicially enforceable. *E.g., Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam); *Chrysler Corp. v. Brown, supra,* 441 U.S. at 301–02, 99 S.Ct. 1717.

We conclude, therefore, that the court did not err in holding that the taking of assignments of defaulted guaranteed mortgages is a matter committed to agency discretion within the meaning of the Administrative Procedure Act, and not judicially reviewable.[9] The judgment appealed from will be affirmed.

---

7. *Id.* at § 509(a)(3)–(4), 59 Stat. 631 (current version at 38 U.S.C. § 1820(a)(3)–(4) (1976)).

8. *Id.* at § 509(c) (current version at 38 U.S.C. § 1820(c)).

9. *See Fitzgerland v. Cleland,* 650 F.2d 360 (1st Cir. 1981); *Simpson v. Cleland,* 640 F.2d 1364 (D.C.Cir.1981).