**In re QUALITY CARE MEDICAL EQUIPMENT CO., INC., Debtor.**

**QUALITY CARE MEDICAL EQUIPMENT CO., INC., Plaintiff,**

**v.**

**Otis R. BOWEN, Secretary of U.S. Department of Health and Human Services, Maurice Hartman, Regional Administrator Region III, Health Care Financing Administration, and Pennsylvania Blue Shield, a Corporation, Defendants.**

Misc. No. 88–0572.
Bankruptcy No. 85–05451F.
Adv. No. 88–0566F.

United States District Court,
E.D. Pennsylvania.

Nov. 16, 1988.

Michael A. Cibik, Philadelphia, Pa., Kenneth Berlin, Paul Bousquet, Joan Meier, Winthrop, Stimson, Putnam & Roberts, Washington, D.C., for plaintiff/debtor Quality Care Medical Equipment Co., Inc.

Catherine L. Votaw, Asst. U.S. Atty., Philadelphia, Pa., for defendants.

ORDER

HANNUM, Senior District Judge.

AND NOW, this 16th day of November, 1988, upon consideration of the Recommendation and Opinion submitted by United States Bankruptcy Judge Bruce I. Fox, and Defendants' Objections to Bankruptcy Court's Opinion (Docket Entry No. 2), it is hereby ORDERED that the complaint in this matter is DISMISSED for failure to state a claim upon which relief may be granted.

1. Following argument on the motion to dismiss an amended complaint was filed. Defendants then filed a motion to dismiss the amended complaint. This memorandum will address both the initial and the amended complaint.

## OPINION
### October 14, 1988.

BRUCE I. FOX, Bankruptcy Judge:

Before me is the defendants' motion to dismiss the complaint in this adversary proceeding.[1] The dispute between the parties arises from the refusal by Pennsylvania Blue Shield to pay plaintiff's claims under the Medicare Part B program.

For the purpose of resolving a motion to dismiss, a court must accept as true plaintiff's factual allegations as well as all reasonable inferences fairly deducible therefrom. *See Ransom v. Marrazzo*, 848 F.2d 398, 401 (3rd Cir.1988); *D.P. Enterprises v. Bucks County Community College*, 725 F.2d 943 (3rd Cir.1984); *In re Stephen W. Grosse, P.C.*, 68 B.R. 847 (Bankr.E.D.Pa. 1987). Thus an exegesis of the facts as alleged in the complaint as amended is necessary. Additionally, given the nature of this dispute, some background concerning the statutory scheme governing Medicare Part B and of the administrative system implementing the statute is required as preamble to the recited facts.

### I.

Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* establishes the federal health insurance program commonly known as Medicare. Part A of Title XVIII, which is not at issue in this proceeding, provides inpatient hospital services, skilled home nursing care and certain other home health services. Part B is "a federally subsidized voluntary health insurance system for persons who are 65 or older or who are disabled.... Part B supplements Part A's coverage by insuring against a portion of some medical expenses ... that are excluded from the Part A program." *United States v. Erika, Inc.*, 456 U.S. 201, 202, 102 S.Ct. 1650, 1651, 72 L.Ed.2d 12 (1982).

The defendant Secretary of Health and Human Services is responsible for administering the program. 42 U.S.C. §§ 1395kk, 1395hh. This authority has been delegated by the secretary to the Health Care Financing Administration ("HCFA"). The actual administration of the program is then undertaken by entities, known as "carriers", which are typically private insurance underwriters. The carriers contract with HCFA and are ultimately responsible for processing claims for benefits. *See* 42 U.S. C. § 1395u; 42 C.F.R. Part 405, subchapter B. *See also* S.Rep. No. 404, 89th Cong., 1st Sess. 53–54, *reprinted in* 1965 U.S. Code Cong. & Admin.News 1943, 1993 ("in performance of their contractual undertaking, the carriers ... act on behalf of the Secretary, carrying on for him the government administrative responsibilities imposed by the [Act]").

Included in the coverage under Part B are claims for medically necessary durable equipment. Among the equipment which may be the subject of such claims is an item known as a "seat-lift chair." A seat-lift chair apparently is a contraption which functions as a seat, but which can mechanically lift a seated individual from sitting to standing position. It may be prescribed for individuals who have arthritis or other impairments which makes the process of standing difficult.

The plaintiff, Quality Care, is an entity which supplies seat-lift chairs. In numerous cases between 1982 and 1985, plaintiff supplied seat-lift chairs to individuals with coverage under Part B of the Medicare program and took assignment of those individuals' claims.[2]

The defendant Pennsylvania Blue Shield ("PBS") is the carrier in Pennsylvania which has contracted with HCFA to administer the Medicare Part B program. It appears that for some period of time between 1982 and the spring of 1985, PBS routinely paid the assigned claims of plaintiff and others for seat-lift chairs.

On or about April 15, 1985, however, PBS sent plaintiff a letter which denied one of plaintiff's claims for reimbursement for a seat-lift chair. Included within that letter was some reference to a new "intensified review policy" by which claims for seat-lift chairs would be subject to additional scrutiny in order to determine whether

**2.** The plaintiff has not quantified the number of claims it has held, the number of claims for which it has not been reimbursed or the monetary value of either. That information is not essential to resolution of this motion to dismiss.

the equipment provided was medically necessary.

Subsequently, in the summer of 1985, PBS began to routinely deny claims for reimbursement for seat-lift chairs submitted by plaintiff and others pursuant to its intensified review policy. Presumably PBS concluded, upon review, that most seat-lift chair claims did not involve medically necessary equipment.

On September 12, 1985, PBS then sent out a general notice to all durable medical equipment suppliers in Pennsylvania notifying them of the new intensified review policy and setting out the medical necessity criteria. Shortly thereafter, the plaintiff and others applied to PBS to be paid for all claims arising prior to September 18, 1985 pursuant to 42 U.S.C. § 1395pp(a). That provision constitutes a "limitation on liability" in certain circumstances where neither the insured nor the supplier knew or should have known that a particular service would be excluded from coverage. Seat-lift chair claimants including the plaintiff took the position that they could not have known prior to September 12, 1985, that the implementation of an intensified review policy would ultimately preclude payment of their claims.

The complaint alleges that in virtually every case, PBS agreed with the claimant, applied the limitation of liability provision and paid all claims arising prior to September 18, 1985.[3]

For plaintiff, however, and at least one other claimant, PBS took a different position. On January 27, 1986, PBS notified the plaintiff that it would not pay most of its claims arising prior to September 18, because of the April 15, 1985 letter which mentioned the new intensified review process. PBS asserted that the letter had put plaintiff on notice of the new policy so that the limitation of liability provision of 42 U.S.C. § 1395pp(a) was inapplicable to it. Similarly, at least one other claimant, an entity known as Exercise and Home Med-Quip, received a letter on January 27, 1986 denying it the generally applicable September 18, 1985 waiver date on the basis that it had been notified of the more strict review policy in a September 22, 1981 claim denial letter virtually identical to the April 16, 1985 claim denial letter received by Quality Care.

Meanwhile, for reasons which one suspects are not unrelated to the facts at issue here, on December 18, 1985, the plaintiff filed bankruptcy under chapter 11 of the bankruptcy code.[4] PBS's January 27, 1986 denial of plaintiff's application for a waiver of liability thus occurred postpetition.

As to Exercise and Home Med-Quip, the decision to deny the September 18, 1985 waiver date was reversed on June 23, 1986, allegedly due to the intervention of an elected official. Apparently all claims of Exercise and Home Med-Quip arising prior to September 18, 1985 were then paid. As to the debtor/plaintiff no claims were paid.

Pursuant to the statute, the carrier is required to provide a right to appeal an adverse carrier decision. *See* 42 U.S.C. § 1395u(b)(3)(C). The initial stage of the appeal is known as "carrier review." *See* 42 C.F.R. § 405.807 *et seq.* Carrier review of an adverse decision must be requested within six months of the determination unless that period is extended by the carrier. 42 C.F.R. § 405.807(c). If timely carrier review is requested and the carrier decision is upheld, a claimant may appeal and obtain a carrier "fair hearing." *See* 42 C.F.R. § 405.820 *et seq.* Carrier fair hearing officers are employees of the carrier. They are, however, required to be impartial and insulated from the claims processing function. Again, a carrier fair hearing must be requested within six months of a carrier review determination unless that period is extended for good cause.

Here, the plaintiff admits that it did not timely request carrier review of the January 27, 1986 decision by which it was de-

---

**3.** This date differs from the September 12, 1985 date on which notice was sent presumably to allow some time for mailing and assimilation of the notice's contents.

**4.** This is not the only dispute involving seat-lift chairs which has been litigated in this forum. *See In re Stelweck,* 86 B.R. 833 (Bankr.E.D.Pa. 1988) (questions of dischargeability of claims for allegedly fraudulent seat-lift chair reimbursements).

nied reimbursement for assigned claims arising prior to September 12, 1985 and by extension did not timely request a fair hearing. It was not until April 29, 1987, that plaintiff's counsel first requested carrier review of the January 27, 1986 decision. That request was denied on May 12, 1987 on the ground that the request was untimely and that no good cause existed for a late appeal. Subsequently, in January, February and March of 1988, the plaintiff requested review of the May 12, 1987 denial of its request for carrier review. By letter of April 25, 1988, that request was denied. The instant adversary proceeding was then filed on May 2, 1988.

## II.

In its amended complaint, the plaintiff asserts jurisdiction pursuant to the federal bankruptcy statutes, 28 U.S.C. §§ 157, 1334, the federal mandamus statute, 28 U.S.C. § 1361, and the federal question statute, 28 U.S.C. § 1331. The complaint contains four counts, three of which assert denial of constitutional rights.

Count One asserts that by denying plaintiff's seat-lift chair claims, while paying those of others including Exercise and Home Med–Quip, the defendants denied plaintiff equal protection of the law. Count Two alleges that the defendant's actions denied the plaintiff its statutory and regulatory right to carrier review and/or a fair hearing on its claims. Count Three asserts that plaintiff has a property right to carrier review and/or a fair hearing on its claims and contends that such property right was denied without due process of law. Finally, Count Four alleges that the plaintiff was improperly denied due process of law because the carrier allowed the same individual to make the waiver, timeliness and good cause determinations.

As to relief, the plaintiff requests alternatively that I order the defendants to pay

claims arising prior to September 18, 1985, that I order the defendants to perform carrier review and/or fair hearing on plaintiff's claims, or that I order carrier review and/or fair hearing on the question of whether good cause exists for untimely review.

Defendants' motion to dismiss contains numerous arguments, most of which are related to the court's power to hear this dispute. They argue first that this dispute is non-core so that the court may not enter binding findings of fact and conclusions of law. *See* 28 U.S.C. § 157(b), (c). They further argue that I am not empowered to hear this matter first because the issues have been delegated by Congress to the exclusive authority of the defendants and alternatively because the plaintiff failed to exhaust administrative remedies. Finally, they argue that the plaintiff has presented no claims on which relief could be granted.

For reasons I will discuss below, this dispute is non-core. Consequently, my authority is limited to making a recommendation to the district court. Because I conclude that plaintiff has no cognizable claims on which relief can be granted and has failed to properly exhaust available administrative remedies, I will recommend that the district court dismiss this proceeding.

## III.

By this action, the plaintiff ultimately seeks an opportunity to obtain payment on claims which were created and assigned to it prepetition. Essentially plaintiff seeks to collect an asset of the estate amounting to a prepetition account receivable.

Defendants have argued and plaintiff has ultimately conceded that this action is non-core. *Plaintiff's Supplemental Memorandum* at 9.[5] A review of plaintiff's amended complaint makes clear that the

---

5. Plaintiff does not concede that its action is non-core because it constitutes an action to collect an account receivable. Instead it contends the action non-core because "an action to vindicate a debtor's constitutional rights is not a core proceeding." *Plaintiff's Supplemental Memorandum* at 9. This statement is probably over-

broad. *See, e.g., In re Navarro,* 83 B.R. 348 (Bankr.E.D.Pa.1988) (question of debtor's first amendment rights in context of a core proceeding); *In re Connelly,* 59 B.R. 421 (Bankr.N.D.Ill. 1986) (question of debtor's fifth amendment rights in context of a core proceeding).

action is one for which jurisdiction is appropriate in bankruptcy court only insofar as it might ultimately allow the debtor to collect a prepetition asset of the estate. Since the instant action is thus a prerequisite to what amounts to a prepetition account receivable action, I can see no justification to assert jurisdiction in bankruptcy court which would exceed that of this court over the ensuing potential collection suit.[6] As I have held previously, accounts receivable actions are non-core. *In re Earle Industries,* 71 B.R. 919 (Bankr.E.D.Pa.1987). *See also, e.g., In re George Woloch Co. Inc.,* 49 B.R. 68 (E.D.Pa.1985).

■■■ 28 U.S.C. § 157(c) states that only the district court may enter a final order or judgment in a non-core proceeding. By implication then, bankruptcy courts, in non-core matters, may enter only interlocutory orders, absent the consent of all parties. *In re Guy C. Long, Inc.,* 74 B.R. 939, 942 n. 5 (Bankr.E.D.Pa.1987); *In re Earle Industries, Inc.,* 72 B.R. 131, 135 (Bankr.E.D. Pa.1987); Taggart, *The New Bankruptcy Court System,* 59 Am.Bankr.L.J. 231, 245 n. 58, 250 n. 70 (1985). Although the denial of a motion to dismiss is an interlocutory order, *see, e.g., Louisiana Ice Cream Distributors v. Carvel Corp.,* 821 F.2d 1031, 1033 (5th Cir.1987), an order dismissing a complaint is final. *Halet v. Wend Investment Co.,* 672 F.2d 1305, 1309 (9th Cir. 1982). Since this matter is non-core and dismissal is appropriate, absent consent by the parties, I am empowered only to make such a recommendation to the district court. 28 U.S.C. § 157(c).

### IV.

■■■ The argument which the defendants have pressed most vigorously is that the plaintiffs have no cognizable cause of action in this or any court, because the actions challenged have been delegated to the exclusive authority of the agency. On this issue, the parties have pointed out that the Supreme Court has twice considered the scope of federal jurisdiction to review agency action taken under Medicare Part B. Not surprisingly, however, the parties differ on the import of the two decisions.

In *United States v. Erika,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), the court unequivocally stated that the Medicare statute "fails to authorize [judicial] review for determinations *of the amount of Part B awards." Erika,* 456 U.S. at 208, 102 S.Ct. at 1654 (emphasis added). Relying on the language of the statute as supplemented by the legislative history, the Supreme Court found "persuasive evidence that Congress deliberately intended to foreclose [judicial] review" of agency decisions on the amount of particular claims. *Id.*

Subsequently, in *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986) the court considered a somewhat different question. There, several individuals and an organization challenged the validity of a regulation issued to implement the Medicare Part B program. The court unanimously concluded that such a suit is cognizable in federal court. Relying on the strong presumption in favor of finding that Congress intends judicial review of administrative action as well as the relevant legislative history, the court determined that judicial review is available under Part B on questions concerning the methods by which Part B awards are calculated as opposed to the actual calculations made. *Michigan Academy,* 476 U.S. at 674–678, 106 S.Ct. at 2140. The court concluded that the *Erika* holding "preclude[s] judicial review only 'of adverse hearing officer determinations of the amount of Part B payments.'" *Id.,* 476 U.S. at 677, 106 S.Ct. at 2139. Consistent with these conclusions, the court held that judicial review is available on questions of the validity of the Secretary's regulations

---

**6.** On the other hand, because this action, if successful, might enhance the estate, it is not an action which could not "conceivably have any effect on the estate being administered in bank- ruptcy" over which this court lacks any jurisdiction. *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984). *See also, e.g., In re Fietz,* 852

implementing the Part B program.[7] *Id.,* 476 U.S. at 678, 106 S.Ct. at 2140:

> We conclude, therefore, that those matters which Congress did *not* leave to be determined in a "fair hearing" conducted by the carrier—including challenges to the validity of the Secretary's instructions and regulations—are not impliedly insulated from judicial review by 42 U.S. C. § 1395ff.

(Emphasis in original.)

Each count of the complaint in the case at bench assertedly challenges the carrier's procedure in denying review of plaintiff's claims for reimbursement. The defendants contend that the plaintiff is attempting to circumvent the proscriptions of *Erika* by dressing up its challenge to the carrier's determination in the cloak of the constitution.

I cannot accept defendants' position on this point. Certainly, this is not the clearest case controlled by *Erika,* in which a claimant obtained a monetary award from the carrier and seeks more from the courts. Here the challenge is not to the carrier's denial of benefits, but rather to the process by which review of that determination has been denied.

*Michigan Academy* makes clear that regulations implementing the Part B program are subject to challenge as contrary to the mandate of the enabling statute. Similarly, such regulations and their implementation must be subject to challenge on constitutional grounds. *Michigan Academy,* 476 U.S. at 681 n. 12, 106 S.Ct. at 2141 n. 12. *See also McCuin v. Secretary of Health and Human Services,* 817 F.2d 161, 165 (1st Cir.1987) (*Michigan Academy* teaches that *Erika*'s proscription of judicial review should be construed narrowly).

F.2d 455 (9th Cir.1988); *In re M. Paolella & Sons, Inc.,* 85 B.R. 965, 969 (Bankr.E.D.Pa.1988).

7. Section 205(h) of the Social Security Act, 42 U.S.C. § 405(h) provides that:
 No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28, United States Code, to recover on any claim arising under this title.

The defendants have an obligation to implement the Medicare Part B program consistently with the statute and the constitution. As the Supreme Court concluded in *Michigan Academy* Congress has not precluded judicial review to ensure that such mandate is met. Challenges to the agency's process based on the statute and the constitution are thus within the subject matter jurisdiction of the federal courts. *See McCuin.* Whether such challenges present cognizable claims upon which relief can be granted is a separate question which the federal courts are not jurisdictionally precluded from deciding.

## V.

### A. *Plaintiff's Equal Protection Claim.*

The legal theory on which Count One of the complaint rests is that equal protection was denied because plaintiff and Exercise and Home Med–Quip were similarly situated and one's claims were paid while the other's denied. The allegations of the complaint, however, fail to state a colorable equal protection claim for two reasons.

The first is that on the face of the complaint, the carrier's decision as to Exercise and Home Med–Quip was administratively reversed on June 23, 1986, within five months of the January 27, 1986 decision to deny the claims. The request for review or reconsideration upon which reversal was predicated clearly came within the six month appeal period provided for by regulation. 42 C.F.R. § 405.807(c). This distinguishes the claims of Exercise and Home-Med Quip from those of the plaintiff, because the plaintiff admittedly did not file a timely request for review.

Secondly, the plaintiff and Exercise and Home Med–Quip are not similarly situated,

Contrary to the position taken by the defendants in their motion to dismiss, the court in *Michigan Academy* does consider 42 U.S.C. § 405(h) and concludes that it is not an insuperable barrier to review of actions taken by the agency in implementing Part B other than determinations of the amounts of claims. *Michigan Academy,* 476 U.S. at 678–679 [106 S.Ct. at 2140–41].

because the dates on which the agency allegedly notified each entity of their intensified review policy differs by 3½ years. While both entities received denials of the generally applicable waiver date in January, 1986, it makes little sense to compare agency decisions where one was based upon notice given to an entity in September, 1981 and the other decision was based upon notice given to the other entity in April, 1985.[8] Absent allegations of different treatment of similarly situated entities, no colorable equal protection claim is presented and Count One of the complaint must be dismissed. *See Holloway v. Schweiker,* 724 F.2d 1102, 1105 (4th Cir. 1984), *cert. denied,* 467 U.S. 1217, 104 S.Ct. 2664, 81 L.Ed.2d 369 (1985) (equal protection claim dismissed where defendant properly and uniformly applied a valid time bar):

> The essence of Holloway's complaint, then, is no more than that the proper exercise of a valid statute of limitations has rendered time barred his otherwise meritorious claim and that therefore a constitutional violation occurred. The contention that such a claim rises to the level of a constitutional deprivation is wholly insubstantial and frivolous.

B. *Plaintiff's Claim that it was Denied its Statutory and Regulatory Right to Carrier Review.*

In evaluating the balance of plaintiff's claims, it is essential to conclude exactly which carrier determination purportedly violated plaintiff's rights. As set out above in narrative form, several agency actions were taken. These are: the agency decision of April 15, 1985 to deny an individual claim made upon application of an "intensified review policy"; the agency decision of January 27, 1986 to deny the plaintiff's application for a "limitation on liability" on the ground that the April 15 letter constituted notice of new agency policy; the May 12, 1987 decision to deny plaintiff's untimely request for review on the ground that no good cause existed for a late appeal; and the April 25, 1988 decision to deny review of the May 12, 1987 determination that no good cause existed for untimely review.

■ The complaint as amended focuses upon the May 12, 1987 decision to deny plaintiff's untimely request for review. Having failed to request timely review of this decision within the six month period specified by 42 C.F.R. § 405.807(c),[9] plaintiff apparently recognizes the exhaustion problem attendant in directly challenging the January 27, 1986 decision to deny it a limitation on liability. *See generally McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *National Assoc. of Rehabilitation Facilities, Inc. v. Bowen,* 840 F.2d 931 (D.C.Cir.1988).[10]

■ Given the plaintiff's focus on the carrier's good cause denial, it is necessary to examine the enabling statute and the regulatory scheme implementing it to determine whether statutory or regulatory rights were violated. The statute itself provides little support for plaintiff's posi-

---

**8.** Plaintiff has not alleged that other entities were denied payment of claims on the basis of prior notice of the modification of the carrier's claims review standards. Obviously, plaintiff is not similarly situated with those entities which never had any prior notification of the intensified standard of review.

**9.** Both parties correctly recognize that plaintiff's request for review was not made timely by application of 11 U.S.C. § 108. That provision applies by its terms to time periods which are unexpired on the date on which a debtor's bankruptcy petition was filed. Here, the applicable time period did not begin to run until several months following the debtor's bankruptcy filing. Additionally, the applicable extension would be no more than 60 days under section 108(b).

Here the request for review was more than six months late.

**10.** The issues and decisions reached by various courts considering exhaustion in cases with facts analogous to those at bench differ, based on the statutory and regulatory schemes at issue. Because exhaustion is not jurisdictional, *Coup v. Heckler,* 834 F.2d 313, 318 (3rd Cir. 1984) and given my resolution of this matter, I need not fully resolve the question of whether failure to timely appeal precludes review of the good cause decision on the ground that plaintiff has failed to exhaust administrative remedies. *Compare Wilder v. Prokop,* 846 F.2d 613 (10th Cir.1988) *with Harper v. Bowen,* 813 F.2d 737 (5th Cir.1987), *cert. denied,* ___ U.S. ___, 108 S.Ct. 466, 98 L.Ed.2d 405 (1988).

tion. Plaintiff points to 42 U.S.C. § 1395u(b)(3) by which Congress mandated that suppliers be provided with a right to review of an adverse carrier determination. That provision, however, does not set time limits or other standards applying to such review but commits them to the discretion of the secretary. Plaintiff's contention that it has some enforceable statutory right to a good cause determination which was denied is thus unavailing. *See Gatter v. Nimmo,* 672 F.2d 343 (3rd Cir.1982). *See also Wilder v. Prokop,* 846 F.2d 613 (10th Cir.1988).

 A review of the regulatory scheme governing carrier review is equally unavailing to the plaintiff. 42 C.F.R. § 405.807 provides:

Review of initial determination.

(a) General. A party to an initial determination by a carrier, who is dissatisfied with such initial determination, may request that the carrier review such determination. If a review is requested, such action shall not constitute a waiver of the right to hearing (see § 405.820) subsequent to such review.

(b) Place of filing request. A request for a carrier to review the initial determination is to be made in writing and filed at an office of the carrier or at an office of the Social Security Administration or the Health Care Financing Administration.

(c) Time of filing request. The carrier shall provide a period of 6 months after the date of the notice of its initial determination within which a party to the initial determination may request review. *The carrier may, upon request by the party affected, extend the period for requesting the review.*

(d) Request for review. Any clear expression in writing by a party to an initial determination which indicates, in effect, that he is dissatisfied with such determination by the carrier and wants to appeal the matter further constitutes a request for review.

(Emphasis added).

Like the statute, the regulation does not give the plaintiff any right to untimely review for good cause.[11] Any decision to grant untimely review is committed by regulation to the discretion of the carrier.[12] Plaintiff therefore can have no claim that its regulatory right to review has been denied. *See Gatter v. Nimmo.*

 Plaintiff contends, however, that the carrier's discretion to allow untimely appeals has been given content by a provision found in the *Medicare Carrier Manual* § 12007.2 which defines "Good Cause" for untimely review as follows:[13]

11. *Compare, e.g.,* 20 C.F.R. § 404.974(b):
 (b) Extension of time to request review. You or any party to a hearing decision may ask that the time for filing a request for the review be extended. The request for an extenson of time must be in writing. It must be filed with the Appeals Council, and it must give the reasons why the request for review was not filed within the stated time period. If you show that you had good cause for missing the deadline, the time period will be extended. To determine whether good cause exists, we use the standards explained in § 404.911.

12. Given the level of discretion which the regulation grants to the carrier, I can find no merit to the plaintiff's assertion that mandamus would lie allowing this court to direct agency action. Jurisdiction to issue mandamus requires a clear, nondiscretionary duty flowing from the agency to the plaintiff. *E.g., Heckler v. Ringer,* 466 U.S. 602, 616 [104 S.Ct. 2013, 2022, 80 L.Ed.2d 622] (1984). It is obvious in the case at bench that no such clear nondiscretionary duty to grant untimely review exists.

13. The good cause alleged by the plaintiff is that:
 (a) Quality Care was unaware during the period for requesting review that claims of other suppliers positioned identically to Quality Care had been paid by PBS under the waiver of liability provisions, (b) on information and belief, PBS deviated from its own internal processing guidelines in processing Quality Care's claims, and Quality Care was unaware of this fact during the period for requesting review, and (c) Quality Care was unaware during the period for requesting review that PBS had given Quality Care an incorrect date for payment of its claim pursuant to the waiver of liability provisions.
 (Amended Complaint at ¶ 37). I note without deciding that it is difficult to envision how this alleged good cause even arguably meets the standard for good cause adopted by the carrier manual or more importantly how agency action rejecting this alleged good cause is arbitrary and capricious. *See generally Hondros v. United States Civil Service Comm'n,* 720 F.2d 278 (3rd Cir.1983).

A. Circumstances beyond the individual's control, including mental or physical impairment (e.g., disability, extended illness) or significant communication difficulties;

B. The death of the individual or his advanced age;

C. Incorrect or incomplete information about the subject claim furnished by official sources to the individual, e.g., whenever a beneficiary is not notified of his appeal right or of the time limit for filing, good cause must be found;

D. Delay resulting from efforts by the individual to secure supporting evidence, where the individual did not realize that such evidence could be submitted after filing a request;

E. Unusual or unavoidable circumstances, the nature of which demonstrate that the individual could not reasonably be expected to have been aware of the need to file timely; or

F. Destruction or other damage, of the individual's records, when such destruction was responsible for the delay in filing.

The Medicare Carrier's Manual, however, by giving content to the regulation which commits determinations on untimely review to the carrier, does not create enforceable substantive rights beyond those of the statute and regulation. *Gatter v. Nimmo*, 672 F.2d at 347. *See also Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed. 2d 685 (1981).

C. *Plaintiff's Claim That it was Denied a Due Process Right to Carrier Review.*

 The plaintiff's claim that it has procedural due process rights under the constitution which exceed the six month appeal period provided by regulation has little merit.[14] Given the nature of the interest involved balanced against the risk of erroneous deprivation and the cost to the system of providing additional process, it

borders on the frivolous to assert that the carrier's application of a six month time bar violates the plaintiff's constitutional rights.[15] *See Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Holloway v. Schweiker.*

## VI.

At bottom, plaintiff requests that the agency and/or the carrier be compelled to grant or at least reconsider its good cause request. Plaintiff has not, however, set forth a cause of action upon which such relief could be granted. For the reasons set forth herein, I will enter a recommendation that the complaint in this matter be dismissed.

---

**14.** The plaintiff has not claimed that the regulation itself or its implementation by way of the Medicare Manual is unconstitutional.

**15.** For similar reasons, plaintiff's constitutional claim that it is entitled to a different decision-maker to determine its good cause application must fail.